No. 36,678

G. W. Frogge, *Appellee*, v. Kansas City Public Service Company, *Appellant*.

(175 P. 2d 112)

Opinion filed December 7, 1946.

*J. O. Emerson* and *A. J. Herrod,* both of Kansas City, argued the cause, and *Fred Robertson, Edward M. Boddington,* both of Kansas City, and *Charles L. Carr,* of Kansas City, Mo., were with them on the briefs for the appellant.

*Blake A. Williamson,* of Kansas City, argued the cause, and *David H. Bresler,* of Kansas City, Mo., *Joseph Cohen, James K. Cubbison* and *Lee Vaughan,* all of Kansas City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This was an action for damages for the destruction of a semitrailer truck outfit which was destroyed in a fire which resulted from a collision of the truck with a streetcar alleged to have been caused by the negligence of defendant. Defendant answered, denying liability, and by cross petition sought recovery for the destruction of its streetcar burned as a result of the same collision, alleged to have been caused by the negligence of plaintiff's driver. The jury answered special questions and returned a general verdict for plaintiff for $4,000, upon which judgment was rendered. No complaint is made of the amount of the verdict if plaintiff is entitled to recover. Defendant has appealed and contends that the court erred in overruling its demurrer to plaintiff's evidence and in overruling post-verdict motions.

In Kansas City, Kan., Kansas avenue is an east-and-west street, paved 52 feet wide. There are two streetcar tracks along and near the center of the street, the north tracks being for westbound streetcar traffic and the south tracks for eastbound traffic. Kansas avenue is intersected at right angles by Second street, which is a north-and-south street, paved about 30 feet wide. Northwest of the intersection of these streets and near the intersection is the port of entry where all trucks going from Kansas into Missouri or coming from Missouri into Kansas must stop to have the trucks and cargoes checked. The port of entry has a paved surface about 33 feet wide north and south and perhaps 80 feet east and west, near the center of which is a port-of-entry office, and to the north of which is a frame building. There is a driveway about 30 feet wide from Second street to the grounds of the port of entry and another driveway on the south to Kansas avenue. These are places for the trucks to enter or leave the port of entry. On May 24, 1944, which was a clear, sunshiny day and the pavements were dry, at about two o'clock p. m., plaintiff's truck, loaded with about 2,600 gallons of gasoline, was being driven by his employee, Walter E. Johnson,

east on Kansas avenue approaching Second street, and on reaching a point almost even with the entrance to the port of entry from the south the driver turned north to go into the port of entry, when the truck was struck by a westbound streetcar belonging to defendant, which was being operated by its employee, Kenneth Calloway. The collision damaged the truck so that the gasoline spilled out on the ground and in a few minutes caught fire, with the result that the truck, with its load, and the streetcar were destroyed. The principal controversy in the case was whether the collision resulted from the negligence of defendant, as alleged by plaintiff, or from the negligence of plaintiff's driver, as alleged by defendant.

Plaintiff's truck consisted of a Chevrolet tractor about 10 feet long, which had six wheels, two in front and dual wheels on each side in the rear. The trailer was about 30 feet in length. The front end of it rested upon the rear part of the tractor. The rear end was supported by dual wheels on each side. In plaintiff's petition it was alleged that the streetcar struck plaintiff's truck on the right side near the rear tractor wheels, and broke the hose connection to the trailer tank, which caused the gasoline to spill upon the street and to catch fire. Defendant, in its answer, admitted that the point of contact between the two vehicles was as alleged in plaintiff's petition. Defendant, in its answer, also alleged that a city ordinance then in force provided that "All street railway cars shall have the right of way between cross streets . . ."

We first consider appellant's contention that the court erred in overruling its demurrer to plaintiff's evidence. It was stipulated that the plat of the area, drawn to scale, be received in evidence. As to how the collision occurred, plaintiff offered the testimony of four witnesses, two men and two women, who were passengers on the streetcar. While their testimony differed in details, which need not be noted, the testimony of all of them may be summarized, giving to plaintiff the reasonably fair interpretation thereof, as the trial court was bound to do in the consideration of the demurrer, as follows: The witnesses were seated near the front of the streetcar, one of them on the front seat, two on the next seat back, and the other one near the front. Each of them testified that the streetcar, as it approached Second street from the east, was traveling at a normal rate of speed, about 20 to 25 miles per hour; perhaps one of them placed it at 18 to 20 miles per hour. They saw plaintiff's truck approaching from the west before it reached the point where it

turned north to go into the port of entry. Before turning north it was traveling at about 20 to 25 miles per hour. They also saw it when it turned north across the streetcar tracks to go into the port of entry and estimated its speed there as about five or six miles per hour. They fixed the location of the streetcar at the time the transport truck turned across the streetcar tracks to go into the port of entry at a place east of Second street as much as 50 or 75 feet or more. They testified that the operator of the streetcar was giving no attention ahead to the traffic, but was talking to persons on the streetcar who were behind him, or perhaps back and to the left of him, or looking to the south; that about the time the streetcar was crossing Second street, or had crossed it, and the transport truck was crossing the streetcar tracks and the operator of the streetcar was paying no attention to the traffic ahead, the women on the car screamed; that the motorman then looked to the front and apparently undertook to do something to control the streetcar, but that it was then too late and that the streetcar continued at its regular speed until the actual point of collision. They testified that the streetcar struck the transport on the right-hand side near or just in front of the wheels near the rear of the trailer and gasoline began to run from the trailer; that after the streetcar stopped they had to break the door of the streetcar in order to get out. One passenger near the front fell down and had to be carried out.

Plaintiff also offered the testimony of the officer in charge of the port of entry, who did not see the crash but heard it and immediately went to the scene. He testified that the front end of the streetcar had struck the trailer of the transport unit near the right wheel at the back of the trailer, had burst a two-inch pipe used to drain the gasoline from the trailer, and that the gasoline was flowing rapidly on the pavement; that Walter Johnson told him to call the fire department, for the gasoline would catch fire; that he told the passengers in the streetcar to break the door of the car to get out, and that they did so, and that just as the last passenger was moved from the streetcar there was an explosion. Two other employees at the port of entry heard the crash and went to the scene, where they could see it. Their testimony was that at the north side of the pavement there was a narrow strip of gravel in the entrance to the port of entry where the pavement was somewhat higher than on the street, and that the front wheels of the tractor were in or just past this graveled strip, spoken of by some of the witnesses as a depression.

In arguing this point counsel for appellant call attention to the pleadings with respect to the point of contact and contend that was fixed by the pleadings as being at the rear of the tractor and not at the rear of the trailer. We think that the pleadings on that point are not controlling. The demurrer was to the evidence, and to pass upon it we think the court was required to take the evidence as true. Counsel for appellant also stress the city ordinance to the effect that between intersections the streetcar had the right of way. We think that not controlling on the demurrer when the evidence showed that the driver of the transport truck had started to make his turn and was actually crossing the streetcar tracks before the streetcar had crossed Second street. We find no error in the court's ruling on the demurrer to the evidence.

The defendant offered testimony of witnesses who were passengers in the streetcar which conflicts sharply with the testimony of the plaintiff's witnesses. The weight of all this testimony was for the jury and the trial court. Defendant also offered evidence tending to show that the driver of plaintiff's truck did not give the hand signal required by our statute (G. S. 1945 Supp. 8-547) of his intention to turn to the left into the port of entry.

The jury was asked and answered questions as follows:

"1. Did the driver of the plaintiff's truck before the collision turn from his travel in a direct course eastward to the north across the street car tracks at a time when such movement could not be made with reasonable safety? A. No.

"2. Did the driver of the plaintiff's truck give any signal of his intention to turn from a direct course in front of the oncoming street car before he started to make such turn? A. Not by hand. In our judgment his position in the street as he approached from west was such to indicate a turn to port of entry.

"3. Was the place where the plaintiff's driver turned to cross to the north and the place where the collision occurred between intersections. A. Yes.

"4. At what rate of speed did the truck travel after it started to turn to the north and up to the time of the collision? A. 5 to 10 mi. hr.

"5. At what rate of speed could the plaintiff's truck have traveled in second gear, that is the first gear above low, as it turned and crossed in front of the street car? A. 15 mi.

"6. Was the motorman of the defendant looking ahead and did he observe the truck at the moment it started to turn to its left? A. No.

"7. Did the motorman of the street car, when he saw the truck turning to the left, promptly throw off the power and apply the brakes and attempt to stop the street car? A. Yes (but saw truck too late).

"8. What was the speed of the street car at the time the truck started to make the turn to the north? A. 18 to 20 mi. hr.

"9. Do you find defendant's motorman guilty of any negligence? A. Yes.

"10. If you answer the foregoing question yes, then state specifically what such negligence consisted of. A. In that he failed to perform his duty in observing oncoming traffic."

Defendant moved to strike the answer to question 1, but the argument on that is practically a reargument of the demurrer to plaintiff's evidence and is not well taken. Also to strike out the second sentence in the answer to question 2. While the question as framed might have been answered "yes" or "no" we think the answer cannot be said to be unreasonably responsive. Defendant also moved to strike out the answer to question 6. That answer was based upon the conflicting evidence and there is no contention that there was not ample evidence to support it. Also to strike out that portion of the answer to question 7 in parenthesis. This motion might have been sustained, but we think the refusal of the court to strike it out was not error, since in view of the evidence favorable to plaintiff the general verdict of the jury carries the same import. Also defendant moved to strike out the answers to questions 9 and 10. This again goes simply to the weight of evidence and there is substantial, competent evidence to sustain the answers.

Upon the hearing of the motion for a new trial defendant complained of several of the instructions, proper objection having been made when they were given. The record, insofar as it is brought to us, indicates that counsel for defendant requested several instructions, some of which were given as requested and the substance of others was embodied in the instructions given. The questions now argued are quite technical at the best and we are unable to see that the matters complained of operated to defendant's detriment. We think it unnecessary to consider them in detail. Defendant also had a motion for a new trial on the jury's refusal to give it any relief on its cross petition, but that seems to have been presented and considered in the case as a whole. As previously stated, the principal controverted question was whether defendant or the plaintiff was guilty of negligence which caused the collision, with resulting damages. The jury having found against defendant on that point it could not very well recover anything on its cross petition.

We find no error in the record. The judgment of the court below is affirmed.